UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABRAHAM BLAU,

Plaintiff,

-v-

SHLOMO FISHER, *et al.*,

Defendants.

25 Civ. 1562 (JPC) (HJR)

OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

JOHN P. CRONAN, United States District Judge:

Plaintiff Abraham Blau brought this action on February 24, 2025, alleging that numerous Defendants engaged in fraud and racketeering in connection with a real estate transaction. Dkt. 1; *see* Dkt. 2 ("Complaint"). Two of those Defendants, Sol Fischer[1] and JDA Holdings LLC ("JDA Holdings"; collectively with Fischer, "Movants"), move to dismiss the claims against them for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), for failure to state a claim pursuant to Rule 12(b)(6), for failure to plead fraud with the particularity required by Rule 9(b), and as barred by collateral and judicial estoppel. *See* Dkt. 46 ("Motion").[2] On June 17, 2026, the Honorable Henry J. Ricardo, to whom this case has been referred for general supervision of pretrial proceedings and to issue a report and recommendation on any dispositive motions,

[1] Various filings refer to Defendant Sol Fischer as "Shlomo Fisher a/k/a Sol Fisher," and the case caption on the docket lists him as "Shlomo Fisher." *See, e.g.*, Complaint at 1, ¶ 8; Dkt. 13 ("Movants Service Affs.") at 5.

[2] A third Defendant, Yakov Anisfeld, joined the motion to dismiss but the Court already dismissed the claims against him for failure to serve process on June 24, 2025. Dkt. 29 ("Anisfeld Dismissal Order"). Judge Ricardo concluded that the motion is moot as to Anisfeld, *see* Dkt. 56 ("R&R") at 2 n.2, and the parties agree, *see* Dkt. 58 ("Objection") at 25; Dkt. 59 ("Response") at 15. The Court therefore denies the motion without prejudice as moot to the extent it is brought by Anisfeld.

recommended that the undersigned grant Movants' Rule 12(b)(5) motion and dismiss the case without prejudice. R&R at 12. For the reasons that follow, the Court adopts that recommended disposition and dismisses the claims against Movants without prejudice for insufficient service. Because the Court grants the Rule 12(b)(5) motion, it does not address Movants' other grounds for dismissal.

## I. Background

The Court recites the facts and procedural history to the extent they are relevant to Movants' motion to dismiss for insufficient service. Plaintiff initiated this action on February 24, 2025, alleging racketeering, fraud, fraudulent transfer, conspiracy to commit fraud, conversion, and unjust enrichment. Complaint ¶¶ 60-95. On May 28, 2025, the Court issued an order directing Plaintiff to file a status letter explaining why he had failed to file proof of service within the ninety-day period for service set by Federal Rule of Civil Procedure 4(m). Dkt. 12 at 1; *see* Fed. R. Civ. P. 4(m). Plaintiff subsequently filed affidavits of service for multiple defendants on May 29, 2025, and June 6, 2025, including Movants. Movants Service Affs. at 1, 5[3]; Dkt. 16. The affidavits indicated that Plaintiff effected service on Fischer by personal delivery of the Summons to his attorney, David Steinmetz, at an office building in Lakewood, New Jersey, on April 9, 2025, Movants Service Affs. at 5, and on JDA Holdings by personal delivery of the Summons and Complaint to the New York Secretary of State on April 7, 2025, *id.* at 1. After several Defendants, including Movants, failed to appear, Plaintiff obtained a Certificate of Default against them on June 16, 2025. Dkt. 26 (Clerk's Certificate of Default as to Movants, Arthur Spitzer, Jacob Muller, and S&W Metals Inc.). On July 3, 2025, the Court referred this action to Judge Ricardo. Dkt 37. On July 8, 2025, Movants appeared and moved to vacate the Certificate of Default as to them on

[3] The page number corresponds to the ECF-generated pagination.

the grounds that it "was procured through Plaintiff's improper service, concealment of parallel litigation, and misrepresentations to the Court." Dkt. 39 at 1. On December 15, 2025, Judge Ricardo granted that motion and "encouraged counsel to agree to accept service to avoid future disputes over service." Dkt. 45 ("Vacatur Order") at 9-10.

On January 5, 2026, Movants filed the pending motion to dismiss the Complaint on multiple grounds, including insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). Dkt. 46. Plaintiff opposed the motion on January 13, 2026. Dkt. 47. Movants replied on January 19, 2026. Dkt. 48. On June 16, 2026, Judge Ricardo held an evidentiary hearing to resolve two disputes concerning the validity of service upon Movants: first, whether Steinmetz was authorized to accept service from Plaintiff on Fischer's behalf on the day that the process server delivered the Summons to Steinmetz, and second, whether JDA Holdings was properly served by delivery of the Summons to the New York Secretary of State. Minute Entry, June 16, 2026; *see also* R&R at 4.

The parties do not dispute that Plaintiff's process server, Chris Rogan, personally delivered the Summons to Steinmetz. Rather, they contest whether Steinmetz had Fischer's authorization to accept service on his behalf. Rogan signed an affidavit stating that, when he gave Steinmetz the Summons, "Steinmetz accepted the documents on behalf of his client." Movants Service Affs. at 5. Steinmetz, however, avers that he told Rogan that he did not represent Fischer in this matter and that he could not accept service. Dkt. 39-2 ("Steinmetz Decl.") ¶ 10. At the evidentiary hearing, Fischer and Steinmetz gave live testimony and were cross-examined by Plaintiff's counsel. R&R at 4. Both testified that Fischer "never authorized Steinmetz to accept service of process on [Fischer's] behalf, either generally or specifically for any new action filed by [Plaintiff]," notwithstanding that Steinmetz had represented Fischer in other cases that Plaintiff

had filed against him. *Id.* at 5. Rogan, the process server, did not testify. He did, however, file a second affidavit recalling "vividly that [Steinmetz] would accept service of Sol Fisher," and stating that "[i]f . . . Steinmetz had denied the service, then I would've continued in my pursuit to effectuate service in accordance to the governing rules and regulations." Dkt. 54 ("Rogan Aff.") ¶¶ 6, 8; *see* R&R at 4-5.

With respect to JDA Holdings, Fischer contends that the entity that is connected to the events underlying this case—and thus the proper defendant—is located and incorporated in New Jersey, not New York, so delivery of the Summons to the New York Secretary of State did not effect service. *See* R&R at 9. "On the stand, Fischer authenticated a Certificate of Formation for JDA Holdings LLC . . . that was filed with the New Jersey Department of the Treasury in 2020 and that listed an address in Lakewood, New Jersey, as its registered office. He testified that at no time has JDA Holdings LLC been located in New York." *Id.* When shown "a copy of the public filing with the New York Secretary of State that [Plaintiff] cites to suggest otherwise, . . . Fischer testified that he had no connection to this New York company of the same name, noting that it apparently was formed [in] the early 2000s, when Fischer was twelve years old and living in Belgium." *Id.* at 9-10. He denied forming a New York limited liability company at that time. *Id.* at 10. Plaintiff did not provide any basis for doubting Fischer's testimony. *See id.*

Judge Ricardo issued the Report and Recommendation on June 17, 2026, recommending that the undersigned grant Movants' motion to dismiss for insufficient service of process under Rule 12(b)(5) and dismiss the claims against them without prejudice. *Id.* at 12. "[B]ased on observations of the demeanor of the witnesses who testified live, consideration of the factual circumstances surrounding the statements made in Rogan's two affidavits, and [Judge Ricardo's]

general experience," Judge Ricardo set forth his findings of fact with respect to service of process on Movants. *Id.* at 6.

As to Fischer, Judge Ricardo found that "the evidence that Steinmetz was *not* authorized to accept service for Fischer[] is more credible." *Id.* At the outset, Judge Ricardo noted that "to the extent [he] does not credit Rogan's account of events," it was not because Rogan failed to provide live testimony. *Id.* at 5 n.5. Rather, it was "because of the inherent implausibility of Steinmetz being authorized to accept service in the circumstances described, and because of Rogan's inability to know what authority Steinmetz had been given and his failure to take steps that could have avoided this dispute." *Id.* Specifically, Judge Ricardo credited the testimony from Fischer and Steinmetz that Fischer was not authorized to accept service given that "[i]t is difficult to imagine what Fischer would gain from" the opposite arrangement—that is, one in which "Fischer would give Steinmetz blanket authority to accept unannounced service of process for any and all cases, or even for new cases filed by [Plaintiff]." *Id.* at 6. In addition, there was no written evidence of the purported authorization. *Id.* (citing N.Y. C.P.L.R. § 318); *see* N.Y. C.P.L.R. § 318 (providing that a person "may be designated . . . as an agent for service in a writing, executed and acknowledged in the same manner as a deed"); *see also* R&R at 8 (noting that Steinmetz described past occasions where, upon accepting service, he would sign a written acknowledgment of service, though one is not required by law for effective service). Judge Ricardo further reasoned that in the ordinary course, an attorney accepts service on his client's behalf "after plaintiff's counsel provides advance notice of the suit as a courtesy and asks opposing counsel to accept service." R&R at 6. That did not happen here. Instead, "Steinmetz and Fischer both gave unrebutted testimony that they were unaware of [Plaintiff's] newly-filed federal court action before April 9, 2025," the day of the attempted service. *Id.* at 7. "These factual circumstances," Judge Ricardo

found, "make it implausible that Steinmetz had actual authority to accept service in this case before Rogan arrived or that Steinmetz told Rogan that he had such authority." *Id.* Next, Fischer corroborated Steinmetz's testimony that Fischer had never granted such authorization, while Plaintiff failed to provide any corroboration for Rogan's averments. *See id.* Finally, Judge Ricardo concluded that while it is "possible that either Steinmetz or Rogan is simply lying," it is likelier that there was a "misunderstanding" given Rogan's relative inexperience as a private investigator at the time of the attempted service. *Id.* at 7-8; *see* Rogan Aff. ¶ 2 ("I have been a Private Investigator in excess of 1 years [*sic*]."). Judge Ricardo suggested that Rogan might have "jumped to the unwarranted conclusion that Steinmetz was authorized to accept service of process in this case" because Steinmetz confirmed he was Fischer's attorney, "even if Steinmetz intended to communicate no such thing." R&R at 8.

As to JDA Holdings, Judge Ricardo observed that "Plaintiff offered no genuine refutation of" Fischer's testimony that he was twelve years old and in Belgium when the New York entity called JDA Holdings LLC was formed. *Id.* at 9-10. According to Judge Ricardo, Plaintiff did not offer any explanation for why he thought it was proper to serve the New York version, "which has no apparent connection to the events alleged, instead of the New Jersey LLC" of the same name, "which has an office in Lakewood, a location connected to the events at issue." *Id.* at 10. Judge Ricardo therefore credited Fischer's testimony that the wrong entity was served. *Id.* at 9-10.

Plaintiff timely objected to the Report and Recommendation on July 1, 2026. *See generally* Objection. On July 13, 2026, Movants responded to Plaintiff's objections. *See generally* Response.

## II. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under Federal Rule of Civil Procedure 72(b), a party may make "specific written objections to the proposed findings and recommendations" within fourteen days of being served with a copy of a magistrate judge's recommended disposition. Fed. R. Civ. P. 72(b)(2). A district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But a *de novo* "determination" does not require a *de novo* hearing, and the district court may "give to the magistrate's proposed findings of fact and recommendations such weight as their merit commands and the sound discretion of the [district] judge warrants." *United States v. Raddatz*, 447 U.S. 667, 683 (1980) (citation modified). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 431-32 (S.D.N.Y. 2016) (citation modified) (collecting cases). Finally, "[a] proper objection generally may not raise new arguments not previously made before the magistrate judge." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(5) permits a party to move to dismiss a complaint based on insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Once a defendant challenges the sufficiency of service of process" under Rule 12(b)(5), "the burden of proof is on the plaintiff to show the adequacy of service." *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co., Ltd.*, No. 13 Civ. 7639 (LTS), 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016) (citation modified);

*accord Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order). When reviewing a Rule 12(b)(5) motion, a court considers matters outside the complaint. *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Rule 4(e) governs service on an individual within the United States:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> . . .
>
> (C) delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Rule 4(h)(1) provides that business entities within the United States may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." *Id.* 4(h)(1)(A).

"If a defendant is not served within 90 days after the complaint is filed," the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* 4(m). A plaintiff can avoid dismissal by showing "good cause for the failure," in which case the Court "must extend the time for service for an appropriate period." *Id.* "The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000). "Good cause . . . is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control." *Feingold v.*

*Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). "Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service." *Vantone Grp. Ltd. Liab.*, 2016 WL 3926449, at *2.

Even in the absence of good cause, however, district courts have discretion to grant extensions of time to effect proper service. *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *see also Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order) ("Although an extension of time is required when good cause has been shown . . ., a district court has wide latitude in deciding when to grant extensions absent good cause."). To obtain a discretionary extension, "the plaintiff must ordinarily advance some colorable excuse for neglect." *Cassano*, 186 F. Supp. 3d at 323 (quoting *Zapata*, 502 F.3d at 198).

## IV. Discussion

Plaintiff objects to the Report and Recommendation's conclusions that (1) Steinmetz did not have authorization to accept service on Fischer's behalf, Objection at 10-17; (2) JDA Holdings was not properly served, *id.* at 17-19; and (3) there is no good cause for extending the period for service on both Defendants, *id.* at 19-21. Plaintiff also objects to (4) the R&R's failure to consider the discretionary factors for extending the period for service in the absence of good cause, *id.* at 21-25, and (5) the recommendation to dismiss the entire action, rather than only Movants, *id.* at 25. Finally, Plaintiff argues in the alternative that the Court should "receive further evidence" or "return the matter to the magistrate judge with instructions" pursuant to Federal Rule of Civil Procedure 72(b)(3). *Id.* at 26. The Court considers each argument in turn.

**A. Plaintiff Failed to Properly Serve Movants.**

**1. Fischer**

Under the Federal Rules of Civil Procedure, a plaintiff may serve process on an individual by personal delivery to "an agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(e)(2)(C), or by complying with the laws governing service of process of the forum state or the state where service is made, *id.* 4(e)(1). Though an attorney may sometimes serve as his client's agent, "simply representing a client does not constitute authorization . . . to accept service on the client's behalf." *United States v. Glaister*, Nos. 20 Civ. 3581 (NSR) (PED), 20 Civ. 3583 (NSR) (PED), 2021 WL 1565678, at *2 (S.D.N.Y. Apr. 21, 2021); *see Williams-Steele v. TransUnion*, 642 F. App'x 72, 73 (2d Cir. 2016) (summary order) ("[S]ervice of process on an attorney not authorized to accept service for his client is ineffective." (citation modified)). New York law and New Jersey law are similar. In New York, service may be made by, among other methods, personal delivery of the summons "to the agent for service of the person to be served as designated under [N.Y. C.P.L.R. §] 318." N.Y. C.P.L.R. § 308(3); *see Di Pompo v. Mendelson*, No. 21 Civ. 1340 (CS), 2022 WL 1093500, at *2 (S.D.N.Y. Apr. 7, 2022). Section 318 of New York's Civil Practice Law and Rules provides that:

> A person may be designated by a natural person . . . as an agent for service in a writing, executed and acknowledged in the same manner as a deed, with the consent of the agent endorsed thereon. The writing shall be filed in the office of the clerk of the county in which the principal to be served resides or has its principal office.

N.Y. C.P.L.R. § 318. "While some New York courts have interpreted a Section 308(3) 'agent' as an appointee other than one named pursuant to Rule 318, it is clear that the designation of an individual to receive service of process must be clear and with the knowledge of the defendant sought to be served." *Di Pompo*, 2022 WL 1093500, at *3 (citation modified); *see Jackson v. Cnty. of Nassau*, 339 F. Supp. 2d 473, 477 (E.D.N.Y. 2004) (collecting cases). "[R]epresentations

made by an individual who accepts the service of process are not binding on the defendant in the absence of proof that the defendant himself knew of such representations." *Di Pompo*, 2022 WL 1093500, at *3 (citation modified) (collecting cases). Thus "an attorney who agrees to accept service on behalf of individual defendants does not automatically become an agent for the acceptance of process, in the absence of proof that his clients actually knew of that representation." *Id.* (citation modified).

Under New Jersey law, service may be effected by "delivering a copy [of the summons and complaint] to a person authorized by appointment or by law to receive service of process on the individual's behalf." N.J. Stat. Ann. § 4:4-4(a)(1). "Service upon an agent tends to be strictly construed, requiring an actual appointment for the specific purpose of receiving process." *Lewis v. Vestberg*, No. 23-0102 (ES) (JSA), 2024 WL 866349, at *3 (D.N.J. Feb. 29, 2024) (citation modified). "The mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service." *Id.* at *4 (citation modified). "Attorneys may be agents for service, but must have express or implied authority to do so." *Id.* The relevant question for all these jurisdictions, then, is not whether the recipient manifested authority to the process server. It is whether the defendant had made "an actual appointment for the specific purpose of receiving process." *Id.* at *3 (citation modified).

The Report and Recommendation concluded that Plaintiff fails to meet his burden to show that Steinmetz had authority to accept service for Fischer when Rogan delivered the Summons to Steinmetz in Lakewood, New Jersey, on April 9, 2025. The Court agrees. Fischer and Steinmetz testified that, notwithstanding their attorney-client relationship, Fischer had not authorized Steinmetz to accept process in new suits brought by Plaintiff. *See* R&R at 5. Plaintiff put forward no contravening evidence other than Rogan's written affidavit stating that he recalled Steinmetz

telling him that he could accept service on Fischer's behalf—a fact that Steinmetz disputes. *Id.* And even if it were true, Steinmetz's representation would not be enough to establish his authorization to accept service. *See, e.g.*, *Lewis*, 2024 WL 866349, at *3. Indeed, there was unrefuted evidence at the hearing that Fischer never authorized Steinmetz. Accordingly, there is no basis to conclude that service on Steinmetz was sufficient to overcome a Rule 12(b)(5) motion. *See Williams-Steele*, 642 F. App'x at 73; *Di Pompo*, 2022 WL 1093500, at *3; *Lewis*, 2024 WL 866349, at *3-4.

Plaintiff's objections to the Report and Recommendation's analysis as to Fischer are unavailing. First, Plaintiff objects that the Report and Recommendation does not mention that "a process server's affidavit of service establishes a prima facie case of the account of the method of service." Objection at 10 (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)). But a court is not required to recite that standard to conduct a Rule 12(b)(5) analysis. *See, e.g.*, *Sadowski v. Falanga*, 170 F. App'x 774, 774-75 (2d Cir. 2006) (summary order) (affirming dismissal for insufficient service). Indeed, "a defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic*, 301 F.3d at 57.

Second, Plaintiff contends that the Report and Recommendation erroneously credited the testimony from Fischer and Steinmetz over the sworn statements of Rogan based on the "conjecture" that "there was a misunderstanding" between Rogan and Steinmetz on the day of the attempted service. Objection at 11 (quoting R&R at 7). This misreads the Report and Recommendation. Judge Ricardo did not speculate about what happened, nor was any "misunderstanding" theory the basis for his recommendation to this Court. After finding that the parties had proffered conflicting evidence, Judge Ricardo made reasonable inferences from the

testimony and other sworn statements of the witnesses. *See* R&R at 5-9; *cf. Frankel v. Slotkin*, 984 F.2d 1328, 1335 (2d Cir. 1993) ("In the fact finding process a trier is authorized to draw reasonable inferences from known or proven facts. But the inference, to qualify as a fact found, must be reasonable, and, in the context of the known facts, be one that springs readily and logically to mind and is not one of two or more inferences, both or all of which are about equally probable." (citation modified)). Judge Ricardo considered that Fischer and Steinmetz both testified that the former had not conferred authority to accept service on the latter; that attorneys typically accept service on their clients' behalf after they know that litigation has commenced and the clients have provided specific, express authorization; that Fischer and Steinmetz did not know that Plaintiff had initiated this suit on the day of the attempted service; that Steinmetz, not Rogan, would know better about whether Fischer had authorized Steinmetz; and, although not a requirement, that there was no written evidence of Steinmetz's purported authorization. R&R at 6-8. Judge Ricardo did not conclude that there necessarily was a "misunderstanding." *Id.* at 7. Instead he suggested that scenario merely as one possible explanation for the conflicting testimony. *Id.*

Third, Plaintiff objects to four inferences in Judge Ricardo's findings of fact. First, Plaintiff objects to Judge Ricardo's observation that Rogan's June 2026 statement that he had been a private investigator "in excess of 1 years [*sic*]" implied that he was inexperienced and therefore likelier to have misunderstood Steinmetz's role as Fischer's attorney necessarily to mean that Steinmetz was authorized to accept service in this case. Objection at 12-13 (citing Rogan Aff. ¶ 2). Plaintiff argues that Rogan had meant to write a number higher than one (as indicated by the plural "years"), but does not say what that number should have been. *Id.* at 12. He then misconstrues Rogan's statement in arguing that it is illogical to say that a person has "*barely* one year's experience" in June 2026 when discussing actions he took in April 2025. *Id.* (emphasis added). But Rogan did

not say "barely" one year, he said "*in excess* of 1 years [*sic*]," Rogan Aff. ¶ 2 (emphasis added), and Judge Ricardo's inference based on that experience was an entirely logical one to draw. Second, Plaintiff objects to the inference that it is unlikely that Fischer would have authorized Steinmetz without prior knowledge of this litigation. Objection at 13. Plaintiff contends that Steinmetz's prior representation of Fischer in multiple litigations involving Plaintiff, "in which further suits by [Plaintiff] were foreseeable," would "make[] such an arrangement natural rather than fanciful." *Id.* Yet he provides no facts to show that Steinmetz's representation of Fischer in prior lawsuits made it at all likely that Steinmetz had the necessary authorization to accept service *for this action*. Third, Plaintiff contests the Report and Recommendation's adverse inference from the lack of video or written evidence showing that Steinmetz represented that he could accept service. *Id.* But that inference relied not just on the lack of such evidence, but also on Rogan's admission in his second affidavit that he abandoned his normal practice of taking "videos and/or pictures of the person being served" and the absence of *any evidence* of a contemporaneous acknowledgement of Steinmetz's authority beyond Rogan's memory fourteen months later. R&R at 8-9 (quoting Rogan Aff. ¶ 7). Fourth, Plaintiff challenges the Report and Recommendation's characterization of the testimony from Fischer and Steinmetz that they were ignorant of this lawsuit before the day of the attempted service as "unrebutted" and, alternatively, claims that discovery would help him rebut it. Objection at 14. Yet Plaintiff proffers no evidence refuting that testimony, nor did he request discovery during the over five months leading up to the evidentiary hearing after Movants filed their motion.

Plaintiff's fourth objection is that the Report and Recommendation "measured" the propriety of service "against [New York Civil Practice Law and Rules Section] 318." *Id.* at 14-15 (quoting N.Y. C.P.L.R. § 318). The Report and Recommendation did no such thing. Judge

Ricardo mentioned that provision of New York law in discussing the "general process" for designating an agent, not a requirement for effective service. *See* R&R at 6. To be sure, the Federal Rules of Civil Procedure and New Jersey law do not require a writing, *see* Fed. R. Civ. P. 4; N.J. Stat. Ann. § 4:4-4(a)(1), and it is at least arguable that New York does not either, *see Di Pompo*, 2022 WL 1093500, at *3. And Judge Ricardo likewise did not rest his recommendation on the absence of a written agency designation.

For those reasons, and because Plaintiff's remaining objections to this portion of the Report and Recommendation are without merit, *see* Objection at 15-17, the Court overrules Plaintiff's objections and adopts the Report and Recommendation's conclusion that Fischer had not authorized Steinmetz to accept service on his behalf in this case at the time Rogan delivered the Summons to Steinmetz.

**2. JDA Holdings**

The Court also adopts the Report and Recommendation's conclusion that Plaintiff did not properly serve the correct JDA Holdings. The entity that Plaintiff served through the New York Secretary of State was not the JDA Holdings identified in the Complaint and that appeared as a Defendant. *See* Complaint, Exh. 3 at 2 (deed transfer record listing a mailing address for JDA Holdings LLC at 33 Shenandoah Drive, Lakewood, NJ 08701). The New York entity was formed in 2002, when Fischer was twelve years old and living in Belgium. *See* Dkt. 41, Exh. 1 (New York Department of State database listing JDA Holdings, LLC, at 21-24 31st Street, Building A, Apt. 3D, Astoria, NY 11105); R&R at 10. The Certificate of Formation for the New Jersey entity, by contrast, was filed with the New Jersey Department of Treasury in 2020 and listed an address in Lakewood, New Jersey, the same town otherwise connected to this action. *See* R&R at 9-10. Plaintiff now argues that this case is meant to resolve which JDA Holdings is the proper defendant and that, in any case, the New York entity was properly served. Objection at 17-18.

Plaintiff's first argument is disingenuous and the second is immaterial. Plaintiff's own filings reflect that the relevant JDA Holdings is located in New Jersey. *See* Complaint, Exh. 3; *see also* Dkt. 28 ("Defts. Pre-Motion Letter"), Exhs. E & F (Plaintiff's filings in the U.S. Bankruptcy Court for the District of New Jersey and New York Supreme Court, King's County, listing JDA Holding LLC's New Jersey address). And the identity of the proper defendant is a question that is relevant to whether the Court should extend Plaintiff's time to effect service, not whether service was proper. The question at this stage is whether the defendant that has appeared—the New Jersey entity called JDA Holdings LLC—was properly served. It was not. The record establishes that the New York entity was the one served, and Plaintiff fails to offer any "genuine refutation" of Fischer's testimony that he is affiliated with the JDA Holdings registered in New Jersey and was never connected to the New York entity by that name. R&R at 10. So the Court adopts the Report and Recommendation's conclusion as to the ineffective service of JDA Holdings.

Finally, Plaintiff objects to the recommendation to dismiss JDA Holdings by arguing that Federal Rules of Civil Procedure 4(m) and 15(c)(1)(C) offer an alternative remedy. Objection at 18. The Court overrules this objection, as well. Rule 15(c)(1)(C) concerns the relation back of an amended pleading—not service. And the Court addresses below why Judge Ricardo's determination that Plaintiff has not shown "good cause" for purposes of Rule 4(m) is correct. *See infra* IV.B.

Accordingly, the Court overrules Plaintiff's objections to the Report and Recommendation's findings as to service of process on Movants and adopts its conclusion that Plaintiff fails to carry his burden of proving sufficient service.

**B. Plaintiff Fails to Show Good Cause to Extend the Service Period.**

Plaintiff next objects to the Report and Recommendation's determination that he fails to show good cause for his untimely service. Objection at 19-21; *see* Fed. R. Civ. P. 4(m) (requiring a plaintiff generally to serve all defendants "within 90 days after the complaint is filed," but "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period"). "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca*, 695 F. Supp. 2d at 66. As a practical matter, weighing these two considerations means that, "[i]n order to establish good cause for failure to effect service in a timely manner, a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Spinale v. United States*, No. 03 Civ. 1704 (KMW) (JCF), 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *report and recommendation adopted*, No. 03 Civ. 1704 (KMW) (JCF), Dkt. 67 (Sept. 30, 2005). "A party seeking a good cause extension bears a heavy burden of proof," and "[g]ood cause may not be based only on a showing that the plaintiff encountered some unanticipated difficulty." *Id.*

The Court agrees with Judge Ricardo that Plaintiff fails to meet this "heavy burden," *id.* *See* R&R at 10-12. Plaintiff knew that Movants were challenging service since at least June 23, 2025. *See* R&R at 11; Defts. Pre-Motion Letter at 2 (advising the Court that service on them "was never properly completed"). The next day, the Court dismissed Anisfeld because Plaintiff had failed to serve him. *See* Anisfeld Dismissal Order. Judge Ricardo further placed Plaintiff on notice that service might be insufficient on December 15, 2025, when he issued an order granting Movants' motion to vacate the certificate of default as against them, Vacatur Order, and again in his May 13, 2026 order scheduling "an evidentiary hearing to determine whether [Movants] were

properly served," Dkt. 49. Despite these warnings, Plaintiff fails to show any diligent efforts to rectify the issue. *See Spinale*, 2005 WL 659150, at *3.

Plaintiff objects to this conclusion by pointing to his January 13, 2026 opposition brief, which requested "an extension of time nunc pro tunc . . . to serve Defendants properly" if the Court found deficiencies in the initial service attempts. Objection at 19 (quoting Dkt. 47 ("Opposition") at 26). He claims that he should not "be charged with inaction for awaiting a ruling on the very application the R&R says he never made." *Id.* at 20. These arguments do not address good cause. Moreover, Plaintiff fails to distinguish his circumstances from those of the cases relied on in the Report and Recommendation, which—in Plaintiff's words—"involve[] plaintiffs who conceded, *or plainly should have known*, that service had failed and then sat idle." *Id.* (emphasis added). Notwithstanding that Plaintiff had affidavits from his process servers stating that service was successful, he sat idle after learning on June 23, 2025, that some Defendants were challenging service. *See* R&R at 11. The first time he sought an extension to serve was six months later in his brief in opposition in January 2026. *See* Opposition at 26. In the interim, Movants incurred the cost of filing a motion to dismiss on, among other grounds, insufficient service. Plaintiff thus has fallen far short of the threshold for showing good cause under Rule 4(m), and the Court overrules his objection and adopts the Report and Recommendation as to the absence of good cause.

**C. The Court Declines to Exercise Its Discretion to Extend the Service Period.**

Even "[i]n the absence of good cause, the Court nevertheless retains the discretion to grant an extension of time to serve the defendant."[4] *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F.

[4] The Report and Recommendation did not conduct an analysis of the discretionary factors. *See generally* R&R. Although Plaintiff did not specifically make arguments as to the discretionary factors, only alluding to them in passing, *see* Opposition at 25-26, the Court sustains Plaintiff's objection to the extent he seeks consideration of a discretionary extension, *see* Objection at 21-22, and conducts that analysis herein.

Supp. 3d 187, 206 (S.D.N.Y. 2024) (citation modified); *accord Buon v. Spindler*, 65 F.4th 64, 75 (2d Cir. 2023). "To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable excuse for neglect.'" *Cassano*, 186 F. Supp. 3d at 323 (quoting *Zapata*, 502 F.3d at 198). Courts generally consider four factors to determine if an extension is appropriate: "(1) whether any applicable statutes of limitations would bar the action once re-filed [which would weigh in favor of extending]; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether [the] defendant attempted to conceal the defect in service; and (4) whether [the] defendant would be prejudiced by extending [the] plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66. And while a court has discretion to extend a plaintiff's deadline, "it is not required to do so." *Zapata*, 502 F.3d at 197. Courts routinely deny requests for discretionary extensions from plaintiffs with extended notice of deficient service and no colorable excuse for their neglect. *See e.g.*, *Miller v. Annucci*, No. 17 Civ. 4698 (KMK), 2022 WL 125807, at *2 (S.D.N.Y. Jan. 13, 2022) (collecting cases).

The Court declines to exercise its discretion to extend the service deadline. The first factor weighs in favor of an extension, as the parties agree that Plaintiff's claims against Movants would be time-barred if brought again after dismissal. *See* Objection at 22; Response at 12. But this factor is not dispositive. *See Cassano*, 186 F. Supp. 3d at 323 (collecting cases). The second factor also weighs in favor of extending the deadline, given that Movants have known about the claims in this suit since around the date of the ineffective service in April 2025. *See* Dkt. 22 (motion filed by Movants on June 13, 2025).

The last two factors weigh heavily in Movants' favor, however. Movants promptly indicated that service was insufficient. *See* Defts. Pre-Motion Letter at 1-2 (filed on June 23, 2025). And after they did, Plaintiff missed multiple deadlines to respond to their letter indicating

the deficiencies in service. *See* Dkt. 35 (stating that Plaintiff missed two deadlines to respond to Movants' June 23, 2025 letter).

As to the fourth factor, the prejudice to Movants weighs heavily in favor of dismissal. This is one of at least four cases Plaintiff has brought against these defendants on his underlying claims. *See* Motion at 2-3; Response at 13. In addition, "extending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants," which the Court can and should consider, especially where the plaintiff knew of the deficiency in service. *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013); *see also Cassano*, 186 F. Supp. 3d at 323-24 ("Even though dismissal may prejudice some of Plaintiffs' claims based on applicable statutes of limitations, which is unclear, this factor is not dispositive . . . and cuts both ways."). Here, as in *Vaher*, the defendants "repeatedly raised the service deficiencies," but the plaintiff "*still* has not attempted reasonable efforts to cure them." *Vaher*, 916 F. Supp. 2d at 421. On this record, a discretionary extension should be declined.

**D. Scope of the Dismissal**

Finally, to the extent the Report and Recommendation could be read to recommend that the entire case be dismissed, the Court declines to do so and instead dismisses Movants only, as they are the only parties that brought this motion. R&R at 12; *see* Objection at 25; Response at 15 (agreeing that "dismissal should reach no further than" those Defendants challenging service). So the Court grants Movants' motion to dismiss for insufficient service, and dismisses them as Defendants. In doing so, the Court denies Plaintiff's alternative request to "receive further evidence" from Rogan or otherwise reopen the hearing. Objection at 26.

## V. Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation's recommended disposition of Movants' motion, grants Movants' motion pursuant to Rule 12(b)(5), and dismisses the claims against them without prejudice. *See* Fed. R. Civ. P. 4(m). The Court denies without prejudice the motion to the extent it is brought by Anisfeld as moot given the Court's prior dismissal of Plaintiff's claims against that Defendant.

Defendants Arthur Spitzer, Samuel Gratt, Jacob Muller, and S&W Metals Inc. have yet to appear in this action and Plaintiff has obtained Certificates of Default as to each. *See* Dkts. 26, 34. Within one week of this Opinion and Order, Plaintiff shall file a letter advising whether he seeks leave to file a motion for default judgment against those remaining Defendants.

The Clerk of Court is respectfully directed to close Docket Number 46 and to terminate Sol Fischer (identified as Shlomo Fisher in the caption) and JDA Holdings LLC as Defendants.

SO ORDERED.

Dated: August 17, 2026
New York, New York

JOHN P. CRONAN
United States District Judge